IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MARTY HOLLAND,

   Petitioner,

v.                                                       No. 1:16-cv-01238-JDB-jay
                                                                Re: 1:15-cr-10020-JDB-1

UNITED STATES OF AMERICA,

   Respondent.

ORDER DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Marty Holland,[1] has filed a pro se motion to vacate, set aside, or correct his sentence (the "Petition"), pursuant to 28 U.S.C. § 2255. (Docket Entry ("D.E.") 1.)[2] For the reasons that follow, the Petition is DENIED.

BACKGROUND

In March 2015, a federal grand jury returned a three-count indictment against the Defendant and his girlfriend, Tracy Harris. (*United States v. Holland*, No. 1:15-cr-10020-JDB-1 (W.D. Tenn.) ("No. 15-cr-10020"), D.E. 2.) Holland was specifically named in Count 1, which charged that he robbed "the Home Banking Company, located in Selmer, Tennessee," in violation of 18 U.S.C. § 2113(a). (*Id.*, D.E. 2 at PageID 3.) With the aid of appointed counsel, he pleaded guilty to Count 1 without an agreement with the Government. (*Id.*, D.E. 28, 50.) At his change

---

[1]In its discussion of the underlying criminal matter, the Court will refer to Holland as "the Defendant."

[2]Unless otherwise noted, record citations in this order are to the instant case.

of plea and sentencing hearings, he was represented by Assistant Federal Public Defender Christina M. Wimbley. (*Id.*, D.E. 28, 37.)

The presentence report (the "PSR") calculated the Defendant's advisory range of incarceration under the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G.") to be sixty-three to seventy-eight months' incarceration. (PSR ¶ 80.) The Government filed a sentencing memorandum indicating that it intended to seek an above-Guidelines sentence of at least 144 months. (No. 15-cr-10020, D.E. 36.)

At the sentencing hearing conducted on September 1, 2015, the Government reported that it was recommending that Holland's federal sentence run concurrently to any state sentences he might receive on two additional robberies and that it would consider leniency in Harris's sentence. (*Id.*, D.E. 51.) Defense counsel indicated that her client was "willing to accept the 144 month upward departure" and waive his right to appeal in exchange for the Government's concessions. (*Id.*, D.E. 51 at PageID 128-29.) The Court engaged in a colloquy with the Defendant regarding the proposed sentence and waiver, in which he stated that he agreed with the 144-month sentence and that he was freely and voluntarily waiving his right to appeal. (*Id.*, D.E. 51.) He also indicated that he had "approached" the Government with the offer to waive his appeal rights, stating "[i]t was my idea." (*Id.*, D.E. 51 at PageID 132.) The Court imposed a sentence of 144 months' incarceration due to the dangerousness of the robbery; the fact that the Defendant had committed several robberies in a short period of time; the fact that Holland had prior robbery, burglary, and kidnapping convictions; and the impact on the victims. (*Id.*, D.E. 51.) The Court further ordered the Defendant to serve three years of supervised release and pay restitution and medical expenses. (*Id.*, D.E. 51.) The Court ruled that the sentence was to run concurrently to sentences that might

be imposed in state cases in Tennessee and Mississippi and found that Holland had freely and voluntarily waived his right to appeal his sentence. (*Id.*, D.E. 51.) Neither party objected to the sentence (*id.*, D.E. 51) and no direct appeal was taken.

DISCUSSION

The inmate filed his Petition on August 29, 2016, asserting the following claims:

Claim 1: The conviction resulted from evidence gathered in an unconstitutional search of Petitioner's home.

Claim 2: The "[c]onviction [was] obtained by use of evidence obtained pursuant to an unlawful arrest." (D.E. 1 at PageID 4.)

Claim 3: Counsel rendered ineffective assistance by failing to argue that the arrest and search were unlawful (Claim 3A) and by promising Petitioner that he would not receive an upward departure (Claim 3B).

Respondent, the United States of America, filed a response to the Petition (D.E. 8), along with an affidavit of counsel (D.E. 8-1). The Government argues that Claims 1 and 2 are not properly before the Court and that Claims 3A and 3B are without merit. Although Petitioner did not file a reply, he submitted a letter to the Court on April 12, 2019, insisting that his claims are meritorious. (D.E. 15.) The letter was accompanied by documents purportedly supporting his claims. (D.E. 15-1.)

A. Legal Standards.

A prisoner seeking to vacate his sentence under § 2255 "must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). A § 2255 petitioner bears

the burden of establishing entitlement to relief. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A § 2255 motion is not a substitute for a direct appeal. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). Generally, "[d]efendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996). Constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. *See, e.g.*, *El–Nobani v. United States,* 287 F.3d 417, 420 (6th Cir. 2002). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating he is "actually innocent." *Bousley v. United States,* 523 U.S. 614, 622 (1998).

Ineffective assistance of counsel is an "error of constitutional magnitude" redressable in a § 2255 proceeding. *Pough*, 442 F.3d at 964. A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Robins v. Fortner*, 698 F.3d 317, 329 (6th Cir. 2012). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

In order to establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's

4

representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options[.]" *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To prove prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

B.  Claims 1 and 2.

As referenced above, Petitioner asserts that his Fourth Amendment rights were violated when he was subjected to an unlawful search of his home and an illegal arrest. Specifically, he alleges that he "was unlawfully restrained of his liberty by local police behind a 'bench warrant' that never existed. This 'bench warrant' was used to obtain a 'search warrant' after [he] was already detained and [the] house was already searched." (D.E. 1 at PageID 4 (emphasis omitted).) Respondent argues that the claims are not properly before the Court. The Court agrees.

A Fourth Amendment claim is not cognizable on collateral review so long as the defendant had a "full and fair" opportunity to litigate the claim in the first instance. *Ray*, 721 F.3d at 762 (extending *Stone v. Powell*, 428 U.S. 465, 494 (1976)). Here, Petitioner indisputably had the opportunity to raise his Fourth Amendment claims during his criminal proceedings.

Even if the claims were cognizable, Holland procedurally defaulted them as he did not raise the Fourth Amendment issues prior to pleading guilty or on direct appeal. Although the Petition may be liberally construed as contending that the ineffective assistance of counsel constitutes cause to excuse the defaults, *see Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013), the inmate has not, as discussed immediately below, established that counsel was ineffective. *See infra* Part C. The procedural defaults are therefore unexcused.

Because Claims 1 and 2 are non-cognizable and procedurally defaulted, they are DISMISSED.

C. Claim 3.

Petitioner submits that counsel was ineffective in failing to raise the Fourth Amendment issues during his criminal proceedings and that she erroneously represented to him that he would not receive an upward departure from the Guidelines range. In response, the Government maintains that the inmate has not shown that counsel performed deficiently, or that he was prejudiced by her conduct.

In her affidavit, counsel averred that Holland's allegation that the search of his home was unlawful "is factually incorrect." (D.E. 8-1 at PageID 28.) She explained that she "reviewed Mr. Holland's discovery, criminal history and the sentencing guidelines as it applied to his case on or about May 3, 2015." (*Id.*) She determined, based "[u]pon [her] review of the case, [that] the

6

search warrant issued on January 14, 2015 was valid[] and[] there were no constitutional issues that needed to be addressed." (*Id.*) According to counsel, during a May 26, 2015, conversation with Petitioner "at the Obion County Jail," he "never asked [her] to raise issues of an illegal search and seizure" and "[e]ven if he had discussed those issues, which he did not, the claim of an unlawful search and seizure did not have merit[]." (*Id.* at PageID 29.) Regarding Petitioner's allegation that counsel should have challenged the arrest, counsel insisted that her "review of the case did not reveal constitutional issues that needed to be addressed and [Petitioner] did not raise such issues or concerns." (*Id.*) She noted further that "[h]e signed a written confession after he was mirandized" and "indicate[d]" to her at the jail "that he wished to change his plea to guilty[.]" (*Id.*)

Petitioner has produced nothing to support his assertion that the arrest and search were unlawful. Although he believes the documents he submitted with his April 2019 letter to the Court "prove" his allegations (D.E. 15 at PageID 56), they do not. The first attachment is a letter from Byron Maxedon, the McNairy County, Tennessee, Circuit Court Clerk, responding to the prisoner's request for a copy of the search warrant. (D.E. 15-1 at PageID 58.) Maxedon stated therein that "[w]hile your actions resulting in your conviction of [r]obbing a bank are in McNairy County, T[ennessee], the search of your home [was] in Hardeman County, T[ennessee] and therefore I have no records of any search warrant in Hardeman County, T[ennessee]." (*Id.*) The absence of a warrant in the McNairy County records does not prove anything about the lawfulness of the Hardeman County search warrant. And, although Petitioner states in his letter to the Court that he "enclose[ed] a copy" of the search warrant (D.E. 15 at PageID 56), he failed to do so.

7

The second document Holland submitted is a copy of a property receipt dated January 14, 2015, the day of the search. (D.E. 15-1 at PageID 59.) The receipt is not time-stamped and does not otherwise suggest that the search of Petitioner's home occurred prior to the issuance of the search warrant. The remaining documents attached to his letter are the judgments of conviction in his federal and state cases (*id.* at PageID 60-66), none of which support his allegations of an unlawful arrest or search.

The inmate's second assertion of ineffective assistance—*i.e.*, that counsel incorrectly told him that the Court would not depart upward from the Guidelines' range—is also devoid of merit. Counsel stated in her affidavit that, "[o]n May 5, 2015, [she] drafted . . . a letter [to Petitioner] that detailed his projected sentencing range if he went to trial and the sentencing range if he pled guilty." (D.E. 8-1 at PageID 28-29.) During the meeting at the Obion County Jail a few weeks later, she

> informed him that although the May 5, 2015 letter outlined a projected range of imprisonment for the bank robbery he had been indicted for, the range did not take into account his other two robberies of a Cigarette Mart and Subway. [She] informed him that because those robberies were admitted to by him and occurred within the same time frame as the bank robbery, an upward departure was possible. In addition, Mr. Holland's Pre-Sentence Report (PSR) was mailed to him on July 28, 2015 and [she] further discussed the possibility of the upward departure that was outlined in Part E of the PSR with him on August 7, 2015 and again on August 27, 2015.

(*Id.* at PageID 29.) Counsel recalled that, "[o]n September 1, 2015, [Petitioner] requested to speak with Assistant United States Attorney Matthew Wilson minutes before his sentencing hearing," and that, although she "was prepared to argue against the upward departure," her client "wished to negotiate the terms of him accepting the upward departure that the Government was seeking." (*Id.*) She stated that "[t]his occurred against advice of counsel." (*Id.*)

8

Petitioner's own statements under oath in his criminal case are consistent with counsel's explanation that she did not promise him he would not receive an upward departure. At the change of plea hearing, the Court advised Holland of the "possible penalties" and he stated that he understood. (No. 15-cr-10020, D.E. 50 at PageID 113-14.) The Court and the Defendant then engaged in the following exchange:

> THE COURT: . . . Now have you and Ms. Wimbley had the opportunity to discuss in a general way the application of what is called the United States Sentencing Guidelines to your case? Have y'all talked about that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: I'm sure as she explained to you, those guidelines basically provide to this Court general ranges of sentencing that I can consider. They're no longer mandatory upon the Court, they're only advisory. However, I'm still directed to consider them, along with other factors that Congress has established in determining what an appropriate sentence might be in your case.
>
> * * *
>
> THE COURT: Okay. Now other than conversations you may have had with Ms. Wimbley about how the advisory guidelines might apply in your case, has anyone else made any type of promise or prediction to you about what your sentence would be if you plead guilty to this charge?
>
> THE DEFENDANT: No, sir.

(*Id.*, D.E. 50 at PageID 115, 117.)

At the sentencing hearing, the Court asked Holland whether his attorney had reviewed the PSR with him, and he responded in the affirmative. As counsel noted in her affidavit, "the upward departure . . . was outlined in Part E of [the] PSR." (D.E. 8-1 at PageID 29; *see also* PSR ¶¶ 94-98.) Moreover, upon being informed by the parties that they had reached a deal regarding a proposed above-Guidelines sentence and an appeal waiver, the Court conducted the following colloquy in which Holland confirmed his consent to the deal and even took credit for it:

9

> THE COURT: And in consideration of the recommendation that has been submitted to the Court, that the upward variance that the government has sought would be granted, and that you would agree to the 144 month sentence, which the Court—as I understand part of the agreement would be the Court would recommend that this sentence be run concurrent with the other state charges and I believe those out of Mississippi, should it proceed to that point.
>
> Is that part of what your understanding is, the agreement with the government, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. And in consideration of those matters, are you advising the Court that you do wish to waive your right to appeal your sentence freely and voluntarily, sir?
>
> THE DEFENDANT: Yes, sir. I approached them with it.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: Yes, sir. It was my idea.

(No. 15-cr-10020, D.E. 51 at PageID 132.)

Holland's prior representations in open court are a "formidable barrier" to § 2255 relief. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). His unsupported allegation in the present case that counsel promised him that he would not receive an upward departure is insufficient to breach the barrier. *See, e.g.*, *Utley v. United States*, No. 2:10-CV-1186, 114(1), 2012 WL 961255, at *6 (S.D. Ohio Mar. 21, 2012), *report and recommendation adopted*, 2012 WL 1354032 (S.D. Ohio Apr. 18, 2012) ("Petitioner's allegation of an off-the-record promise of a sentence less than 115 months is unworthy of credit in view of the [criminal case] record.")

But even if counsel had assured the prisoner that he would not receive an upward departure, the Court cured any misunderstanding by explaining to him at the change of plea hearing what the

potential penalties were and "by making it clear the Court, not the parties, would determine his sentence[.]" *See Garnica v. United States*, 361 F. Supp. 2d 724, 737 (E.D. Tenn. 2005). Under those circumstances, Petitioner cannot show that he was prejudiced by counsel's alleged conduct. *See, e.g.*, *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299-300 (6th Cir. 2016) (quoting *Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999)) (petitioner was not prejudiced by counsel's misrepresentation that he would receive a "time served" sentence where the "proper plea colloquy 'cure[d] any misunderstanding [petitioner] may have had about the consequences of his plea.'"). As Holland has not shown that counsel rendered ineffective assistance, Claim 3 is DENIED.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[3]

IT IS SO ORDERED this 8th day of January 2020.

                              s/ J. DANIEL BREEN
                              UNITED STATES DISTRICT JUDGE

---

[3] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.